**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **JESUS YANEZ,** | § | |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **EP-21-CV-00073-DCG** |
| | § | |
| **WALGREENS CO.,** | § | |
| | § | |
| *Defendant.* | § | |

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY**
**JUDGMENT**

Plaintiff asks the Court to deny Walgreens' motion for summary judgment (Doc. 20) that failed as matter of law because it failed to articulate sufficiently a nondiscriminatory reason for the discharge of Plaintiff and even if it did the motion failed again as a matter of law because there is substantial evidence of pretext. The real reason Walgreens discharged Plaintiff and replaced him with someone in their 30s was motivated by Plaintiff's age.

**I.       Introduction**

Walgreens employed Plaintiff Yanez for more than 21 years until Walgreens discharged Yanez in May 2020 purportedly for removing Walgreens' trash, after Walgreens explicitly authorized Yanez to remove Walgreens' trash, in compliance with the practice and policy of Walgreens of placing trash outside and allowing anyone, including employees, to remove the discarded trash.

At the time of Plaintiff's discharge in 2020, Froylan Villanueva contended that Yanez was discharged because he exposed Walgreens to liability, but such contention was vague, broad, and unexplained. In January 2022, Villanueva contended that Yanez was not discharged for removing Walgreens' trash, but because a ticket should have been opened and that Yanez benefited from

1

Walgreen's trash, but these contentions were also vague and broad.  In February 2022, Villanueva contended for the first time that Yanez violated three policies, but these contentions were also vague and broad.

As shown in this response, there is substantial evidence that all of the purported reasons for the discharge of Yanez were pretext.

## II.     Analysis and Authority

**Summary Judgment Standard**

This Court is very aware of the summary judgment standard.  See *Burns v. McAleenan*, No. EP-17-CV-00264-DCG, 6 (W.D. Tex. 2019).

"The Fifth Circuit has made it clear that summary judgment is strongly disfavored in Title VII actions." *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 190-91 (5th Cir. 2001).  The Supreme Court has "emphasized the paramount role that juries play in Title VII cases, stressing that in evaluating summary judgment evidence, courts must refrain from the making of 'credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts,' which 'are jury functions, not those of a judge.'" *Fierros* at 190-191, (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, (2000)); see *Burns* at 6.

Summary procedures are to be used sparingly in cases:  ...where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of even-handed justice. *Fortner Enterprises, Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 500 (1969) (internal citations omitted). Summary judgment is ill-suited for credibility determinations and is an inadequate procedure for

sorting out questions of motivation.   *Honore v. Douglas*, 833 F.2d 565 (5th Cir.1987); *Thornbrough v. Columbus & Greenville R. Co.*, 760 F.2d 633, 640 (5th Cir.1985)

Discrimination cases rarely involve overt "direct evidence" such as openly discriminatory statements by the decision makers.  "Today, employers, and their supervisors, who might choose to discriminate . . . have become, as a result of twenty years of Title VII litigation, too sophisticated to use . . Instead, the motive is veiled behind apparently neutral remarks about business necessity, an employee's inadequate performance, attitude and the like."  *Barnes v. Yellow Freight Sys., Inc.*, 778 F.2d 1096, 1101 (5th Cir. 1985); *see also United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, (discrimination cases present difficult issues for the trier of fact as "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes"); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012) (recognizing that "motives are often more covert than overt, making direct evidence of forbidden animus hard to come by").

**Burden Shifting Analysis**

As a result, in cases like this one, Yanez can establish his claim of age discrimination and defeat motions for summary judgment based on circumstantial evidence including the substantial evidence that Walgreens' stated reason for terminating Yanez was false or "pretextual" through the burden shifting analysis set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  See *Burns* at 9.

Walgreens did not contend that Yanez cannot make a prima facie case of discrimination. For thoroughness, here is his prima facie case.  Yanez is a member of a protected class, over age 40.  Yanez was qualified for position as Walgreens employed him in the position for 20 years. Walgreens subjected Yanez to adverse employment action, discharge.  Doc. 20-15.  Walgreens replaced Yanez with someone outside the protected class, under 40 years old.  Ex. 16.

**A.     Walgreens' Motion failed as a matter of law because it did not sufficiently articulate a legitimate, non-discriminatory reason for its decision to terminate Yanez.**

"[T]o rebut an employee's prima facie case, a defendant employer must articulate in some detail a more specific reason than its own vague and conclusional feeling about the employee." *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004).  *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 231 (5th Cir. 2015) ("[T]o meet its burden of production under McDonnell Douglas, an employer must articulate a nondiscriminatory reason with 'sufficient clarity' to afford the employee a realistic opportunity to show that the reason is pretextual.')

All of the shifting reasons lodged over the years were vague, conclusory, and without sufficient clarity.

**B.     Despite Walgreen's failure to articulate sufficiently a legitimate, non-discriminatory reason for the discharge of Yanez, Walgreens' Motion failed again as a matter of law because there is substantial evidence that all of the shifting, vague, conclusory, and obscure purported bases for the discharge of Yanez were pretext.**

**1.     Pretext.**

In order to establish that he was terminated because of his age, Yanez may rely on evidence that the employer's legitimate, nondiscriminatory reason was only a pretext—that is, a false or weak reason advanced to hide the actual reason.  See *Burns* at 16-17.

**2.     There is no limit to evidencing pretext.**

The United States Supreme Court has made clear that (1) an employee is "not limited to presenting evidence of a certain type," and (2) pretext evidence "may take a variety of forms." *Patterson v. McLean Credit Union*, 491 U.S. 164, 187 (1989), superseded by statute in part on other grounds, 42 U.S.C. § 1981(b); accord *Ellerbrook v. City of Lubbock*, 465 Fed. Appx. 324, 333 (5th Cir. 2012) (per curiam) (unpublished).

**3.      All of the shifting, vague, conclusory, and obscure purported explanations for the discharge of Yanez were not true, were false, and not believable.**

*a.      The newly purported bases in 2022 for the discharge of Yanez in 2020, that a ticket should have been opened and that there was a violation of the waste disposal policy, are not true, are false, and not believable, because since prior to 2010 to present day the policy of Walgreens in El Paso was that discarded rollers are trash for anyone to remove without a ticket opened for StoreCare to remove the trash.*

Since prior to 2010 the trash policy of Walgreens was to allow stores to elect to place trash, including rollers, outside by the dumpster, instead of being charged.  Ex. 11 Dep. EM 20:2-19.

Edward Marquez worked for Walgreens for 24 years (Id. 14:16-19) with 23.5 of those years as assistant store manager (Id. 15:18-23).  In 2011 and also in 2012 (Id. 25:5-8), Marquez put rollers outside by the dumpster on two different times (Id. 23:10-13) after store manager Eric Martinez called StoreCare and StoreCare instructed him to put the rollers out by the dumpster and let them go as trash, without a ticket opened, and StoreCare said anyone can take the rollers.  Id. 24:1-25.

Walgreens' assistant manager Marquez, aware of the policies and procedures at Walgreens, testified that an employee would not be violating policies and procedures at Walgreens if they went into the dumpster and picked up rollers that were disposed of by him.  Id. 74:1-75:23.  "It was trash.  That means we pushed it outside….so it was a free for all for anyone to take, whether it was an employee or someone that came over from Mexico or somebody that just happened to drive by.  It was trash.  It was discarded as trash.  Anyone could take it."  Id. 74:19-75:11.

Walgreens did not tell the assistant manager Marquez that Walgreens did not want any employee at Walgreens to pick up the rollers from the dumpster.  Id.

Another time Marquez called StoreCare to dispose of a broken ladder and he was advised by StoreCare to <u>either</u> open the ticket or we could just put the ladder outside and let someone take

it and the store would not get charged.  The Walgreens store obviously did not want to get charged, so we just pushed it outside as trash.  Id. 20:2-12.

Ruben Alba was a store manager for Walgreens for years and he declared that Walgreens in El Paso and Las Cruces has a practice of placing store fixtures, which have become trash, outside their stores, near the trash bins.  In all those years, Walgreens never told him such practice was wrong.  In all those years, he was never told not to engage in such practice.  Ex. 15.

No Walgreens employee was ever disciplined for this practice.  Ex. 15.

With the trash rollers the basis of this litigation, Villanueva did not tell Alba to open a ticket for the removal of the trashed rollers.  Ex. 15.  With the trash rollers, Alba complied with the protocol to place the trash rollers outside, near the trash receptacle.  Ex. 15.

Walgreens hired Yanez in 1999 as an assistant manager (Ex. 4 Dep. JY 18:7-9), promoted him to assistant store manager about a year and half later (Id. 19:14-17), and in all those years knew the policies of Walgreens for trash was there was no policy but to place trash outside the store for anyone to remove (Id. 44:6-21), as that was what was normally done and it did not violate policy (Id. 74:19-75:25; 200:9-201:4; 219:11-25).  The store manager usually said leave it outside and somebody will take it, and that was the practice ever since Yanez started working at Walgreens.  Id. 77:4-12.  Leaving stuff outside so it can get removed is how it has always, always been.  Id.  88:17-25.  "We never opened tickets on trash removal, never."  Id. 76:5-10.  Stores are not calling StoreCare, trash is left outside to be removed, all stores are doing it.  "In my 21 years – or 20 years with the company, we would never call StoreCare to remove trash.  Never."  Id. 89:11-90:25.  StoreCare was never called on trash removal.  Id. 114:4-7.  The practice is still being done at stores in town.  Id. 76:7-77:17.  Everyone in the district to this day is still doing it.  Id. 82:1-5.

6

       ***b.    Walgreens promoted Villanueva and other older employees in El Paso were discharged.***

Walgreens promoted Villanueva to district manager when he was 35 years old.  Ex. 14 Dep. FV 12:15-17.  He was a decision maker to discharge Alba.  Id. 16:17-17:10.  Alba is 61 years old.  Ex. 15.  Villanueva replaced him with someone in their 30s.  Ex. 14 Dep. FV 91:15-92:4.  The trend was older people being terminated.  Ex. 11 Dep. EM 72-73; Ex. 4 Dep. JY 152:10-16; 153:1-9; 154:13-19; 181:18-19; 221:1-4.  Alba filed an age complaint.  Id. 30:19-23.  And lawsuit for age discrimination mentioning Villanueva.  Id. 38:3-8; 39:1-5; 40: 4-18.  See *Alba v. Walgreen Co.*, 3:21-cv-00164-DB.  According to Villanueva, older store managers tend to tank it.  Ex. 14 Dep. FV 41:1-5. Alba was replaced by someone younger, in their 30s.  Id. 91:12-92:4.

       ***c.    The first purported basis in 2020 about the discharge of Yanez, about exposure to liability, was not true, was false, and not believable because another policy of Walgreens was to allow and require employees to transport Walgreens' assets in their personal vehicles and Walgreens did not care nor about them harming themselves in the transport.***

Villanueva admitted that it was protocol for Walgreens have their employees use their own trucks to pick up stuff.  Ex. 14 Dep. FV 81:13-16.  Walgreens expected employees to use their own trucks to pick up Walgreens tables and transport them from one store to another.  Id. 82:6-83:1.

Villanueva himself several times transported tables and signage using his own car carrying items sometimes by himself.  Id. 88:4-20.

Villanueva was not worried about liability and safety when employees were carrying tables in their trucks and loading and unloading for Walgreens.  Id. 85:1-5.  Villanueva was not worried about his back when he was carrying tables for Walgreens, and he was not worried about managers carrying stuff on their backs.  Villanueva was not worried about the other employees' backs for trash.  Id. 105:3-16.  Even though Walgreens admitted this was unsafe. Ex. 17 Dep. CB 33:8-34:3;

37:1-5.  Also, Birmaher admitted that she did not know if Villanueva (in his 30s) should be reprimanded, maybe even fired for Villanueva engaging in the unsafe practices.  Id.  35:20-23.

Yanez did not believe he could injure his back nor was it dangerous to lift the trash.  Ex. 4 Dep. JY 97:12-19.

Walgreens purportedly singling out concern for Yanez transporting trash and hurting himself is evidence of pretext because Walgreens did not have concern about all of its other employees, including those in their 30s like Villanueva, transporting material or injuring themselves of the public.

Furthermore, Yanez was not within the course and scope of work when he removed the trash so Walgreens could not have been exposed to liability.  Yanez could not have injured others because he was alone.  The trash was no longer any responsibility of Walgreens.  Yanez removed the trash afterwork, alone.  Ex. 4 JY 43:24; 45:10; 48:13.  Additionally, the trash was no longer Walgreens' asset, and it does not protect trash Ex. 17 Dep. CB 33:8-11.  Ex. 14 FV 110:8-19.

> ***d.     All of the shifting, vague, conclusory, and obscure explanations over the years for the discharge of Yanez were not true, were false, and not believable because Walgreens explicitly authorized Yanez to remove Walgreens' trash pursuant to Walgreens' policy in El Paso that trash should be left outside for anyone to take.***

In 2020, Alba was the immediate supervisor of Yanez.  Ex. 4 Dep. JY 23:17-19.

In about the middle of April 2020 rollers at the store were damaged and broken so Alba placed an order for new rollers.  Id. 45:1-19.  Yanez asked Alba what was to be done with the old rollers and Alba responded that the old rollers were trash.  Yanez asked Alba if he could have the old rollers and Alba responded go ahead and take them.  The old rollers were left outside.  At the end of the day Yanez punched out, went and grabbed them and put them in his truck.  Id. 43:12-25.

According to everyone involved, the old rollers were trash.  Id. 44:6-21.  Even Villanueva admitted the rollers were trash.  Ex. 14 Dep. FV 51:13-17.  Villanueva testified that trash is waste to be disposed of.  Id. 52:18-19.

Alba authorized Yanez to take the rollers home because the rollers were trash.  Ex. 4 Dep. JY 43:17-22.  Alba offered the rollers to Yanez because the rollers were trash.  Id. 48:1-16.

The rollers were trash and "we just like we normally do, we just throw trash outside in our dumpsters, and we throw them outside."  Id. 44:10-21.  The rollers did not fit in the trash bin "[s]o we just left them outside, like we normally do…"  Id. 45:1-11.  The rollers were left outside, so somebody can take them.  At the end of the day Yanez punched out, grabbed the trash and put the trash in his truck. Id. 50:1-6.  Yanez took them home.  Id. 45:1-11.

It was proper "to take these rollers and just throw them in the trash bin, per Walgreens' policy" "because they are trash."  Id. 50:14-17.

> ### e.     All of the shifting, vague, conclusory, and obscure explanations over the years for the discharge of Yanez by Villanueva were not true, were false, and not believable because Villanueva was aware that Yanez was explicitly authorized to remove Walgreens' trash.

Villanueva admitted Yanez was given authority by his direct supervisor Alba to get the rollers.  Villanueva documented that Alba gave authorization for Yanez to pick up the rollers and dispose of them with his own truck.  Yanez had absolute authority.  Yanez did not do anything he was not authorized to do because he had authorization by his direct supervisor Alba.  Ex. 14 Dep. FV 56:10-57:3.  Villanueva admitted that Yanez did not take possession of property when he did not have authority because he did have authority by his immediate supervisor Alba.  Id. 60:14-17.

Villanueva admitted that Yanez should be able to rely on what his immediate supervisor tells him.  Id. 64:13-15.  Villanueva admitted that Yanez rightfully relied on what Alba gave him permission to do.  Id. FV 65:2-5.

Villanueva admitted that Yanez should not be punished if the immediate supervisor is unaware of a protocol. Id. 64:16-19.

       ***f.     The purported violations of any of the policies were not true, was false, and not believable because Villanueva and Walgreens did not believe that Yanez engaged in theft by Yanez removing Walgreens' trash.***

Villanueva admitted that Yanez was not fired for taking the rollers. Id. 100:4-6. As evidence above, Villanueva admitted that Yanez was authorized to possess the trash. Furthermore, he did not call the police to make a report of theft involving Alba and/or Yanez and he could have if he believed somebody is engaged in theft. Id. 55:11-17. Villanueva admitted that the rollers were trash, to be disposed, to be thrown away as waste, to be removed. Id. 51:13-22.

Walgreens' asset protection manager (Ex. 17 dep CB 73:6-8) admitted that Yanez did not take the rollers without authorization and confirmed that Yanez's store manager authorized Yanez to remove the rollers. Id. 30:4-31:3. She also admitted that Yanez did not steal the rollers. Id. 32:11-15.

       ***g.     The newly purported basis of 2022 about violation of a different waste policy than the one practiced by Walgreens was not true, was false, and not believable because at the time Yanez removed Walgreens' trash, Walgreens had a trash control problem.***

Villanueva admitted that the trash "was out of control. It was something we were trying to get fixed." Ex. 14 Dep. FV 72:11-25. Villanueva admitted the trash was an issue and looked pretty bad. Id. 70:6-22. Villanueva asked Alba to assist with trash issues to get picked up and to get a dumpster in place which they were working on. Id. 73:1-4. The trash overflowing was pretty unsafe. Id. 63:3-9. Villanueva admitted that Walgreens was having issues with pick-ups which is why Walgreens was trying to get a dumpster for Alba. Id. 90:1-9.

Discharging Yanez for alleviating a problem of Walgreens is evidence of pretext.

>    ***h.     All of the shifting, vague, conclusory, and obscure explanations over the years for the discharge of Yanez by Villanueva were not true, were false, and not believable because Villanueva was not upset Yanez removed Walgreens' trash.***

Villanueva admitted that he was not upset, he did not ask for the trash/rollers back, he did not want the rollers/trash back, and when he had them back, he would have to pay someone to remove them.  Ex. 14 Dep. FV 127:1-128:10.

>    ***i.     All of the shifting, vague, conclusory, and obscure explanations over the years for the discharge of Yanez by Villanueva were not true, were false, and not believable because Villanueva and Walgreens did not care about putting the company at risk of liability when Yanez returned the trash.  Villanueva did not want the trash back and he and Walgreens do not know nor care what Walgreens does with its trash.***

When Yanez offered to return the rollers to Walgreens Villanueva did not open up a ticket nor have the company go to Yanez's home to pick up the rollers that were trash.  Ex. 17 Dep. CB 89:1-7.

Villanueva did not ask for nor want the trash/rollers back after removed by Yanez.  If he had the trash back, payment would be necessary for removal.  Ex. 14 Dep. FV 127:1-128:10.

Walgreens' director has no idea what is done with items picked up by StoreCare and he does not care what they do with it.  Ex. 12 Dep. RM 26:3-10.

>    ***j.     Villanueva discharged Yanez.***

One week before discharge, on May 20, Villanueva met with Yanez and asked him if the rollers were being offered for sale and Yanez answered yes.  Yanez asked if such was a problem and advised that he could bring the rollers back.  Yanez was asked to bring the rollers back and he brought the rollers back the next day and that was the end of the conversation.  Ex. 4 Dep. JY 57:6-59:9.  In this meeting, there was no discussion of large waste disposal.  Id.  The next day Yanez emailed Villanueva that he brough the rollers back.  Id.

Eight days later, May 28, Villanueva terminated Yanez.  Id.

The only communication Villanueva made to Yanez about discharge was his allegation that Yanez "had put the company's risk at liability."  Id. 56:21-57:3; 60:1-11.  Villanueva did not explain it to Yanez.  Id. 60:19-20.  Yanez did not put the company at liability.  Id. 60:21-23.

> **k.     All of the shifting, vague, conclusory, and obscure explanations over the years for the discharge of Yanez by Villanueva were not true, were false, and not believable because there was no documented reason for the discharge of Yanez.**

There was no documented reason for the termination of Yanez.  Ex. 4 Dep. FV 120:22-122:10; Ex. 17 Dep. CB 23:11-24:7.

> **l.     All of the shifting, vague, conclusory, and obscure explanations over the years for the discharge of Yanez by Villanueva were not true, were false, and not believable because Villanueva and Walgreens did not care about the return of the trash by Yanez.**

Villanueva did not know that the trash/rollers were returned.  Ex. 14 Dep. FV 57:1-22.  Villanueva did not know what was to be done with trash.  Ex. 14 Dep. FV 51:20-25; 52:1-6.  Villanueva admitted that he does not know what Walgreens does with rollers.  Id. 54:1-3; 54:7-11.

Walgreens' asset manager did not know what happened to the rollers nor look for the rollers.  Ex. 17 Dep. CB 90:19-23.  She never asked Yanez to return the rollers/trash.  Id. 91:1-3.  Romero admitted he did not know, and he did not care what happened the rollers.  Ex. 12 Dep. RM 26:6-10.

> **m.     A motivating factor of the discharge of Yanez was his age.**

Walgreens' assistant manager Marquez was asked why a good employee like Yanez would be terminated for something that other employees did and there was not a violation of policy and he testified that "it was their opportune moment to get rid of an older, higher-paid employee."  Ex. 11 Dep. EM 75:13-76:18.

In November 2020, Yanez, pro se, filed a claim with EEOC because he believed that Walgreens discharged him because of his age.  Doc. 20-15.  Yanez filed his lawsuit on February 12, 2021.  Doc. 1-5.  It was discrimination because Yanez was authorized to take home the trash. He did.  The trash was at his home for over a month.  Yanez was called about the trash.  He confirmed authorized possession and returned the trash, returned the trash and was fired.  Ex. 4 Dep. JY 80:5-81:12.  It was  a little "BS" reason to come up with to fire Yanez, for a little thing, something petty, just to get rid of Yanez.  Id. 82:13-83:7; 200:9-25.  The reasons given for termination were false because Walgreens asked Yanez to transport other property in his truck.  It was a bogus excuse just to fire Yanez because of his age.  Id. 114:8-116:4.  Yanez was very surprised he was terminated.  Id.  117:20-21.

Walgreens did not dispute Yanez's unemployment claim.  Ex. 4 Dep. JY 209:24-210:1.

> **n.** **All of the shifting, vague, conclusory, and obscure explanations over the years for the discharge of Yanez by Villanueva were not true, were false, and not believable because nearly two years after the discharge of Yanez, Villanueva contended for the first time that he discharged Yanez for many more different reasons.**

As this Court is aware, shifting explanations demonstrates pretext.  See *Burns* at 17.

On January 6, 2022, Villanueva offered new and different reasons for his decision to discharge Yanez in 2020.  He testified that Yanez was not fired for taking the rollers, but he put them on his truck, and he benefited from a company asset.  Ex. 14 Dep. FV 100:4-14.

As evidenced above in section II.B.3.c., the 2022 explanation for the discharge of Yanez in 2020 for Yanez removing the trash in his truck was pretext.

There is substantial evidence that the third explanation lodged for the first time in 2022 about Yanez benefiting from a company asset was pretext.  Walgreens' asset control manager admitted that once the rollers are picked up, trash to be disposed of, they are no longer an asset of Walgreens. Ex. 17 Dep. CB 33:8-11.  Walgreens does not protect Walgreens' trash.  Id.  89:12-

24.  Villanueva admitted that he did not know if Yanez was gaining anything, and he did not know if the rollers had no more value to Walgreens.  He did know that the rollers were not to be sold or used by Walgreens.  Id. 103:5-14.  He admitted that if something gets thrown and its trash then somebody else picks it up and does something with it, builds it or repairs it and adds work to it, that individual has the right to get paid for his work.  Id. 103:15-20.  As evidence above in section II.B.l. Walgreens did not know nor care about the rollers.

On January 6, 2022, for the first time, Villanueva contended that Yanez should have opened a ticket because these rollers were not to disposed as any other trash, these rollers were special trash with VIP status.  FV 102:5-15.  However, this new explanation was pretextual as evidenced above in section II.B.c.a. as it was not and is not the practiced policy of Walgreens in El Paso to open up a ticket for the removal of trash and rollers.  Additionally, Alba had put in a ticket for emergency cleanup of the trash one week before, but that ticket was cancelled on May 28, 2020.  Ex. 15.  Also, Alba was never told by Villanueva that he was supposed to open a ticket for removal of the rollers which became trash.  Ex. 15.

Furthermore, Villanueva testified that the rollers were still trash that was still supposed to be disposed of and whether the rollers were picked up by company A, B, or C, it was still trash.  Id. 102:24-4.  He did not ask for the rollers to be repaired, but to be disposed of because they were unsafe.  Id. 76:21-77:3.  He had not seen any definition of the word company assets that includes trash for disposal.  Id. 110:8-19.  He does not list trash in his home as an asset.  id. 110:24-111:1.  He does not know where the rollers are, nor did he ask for them back.  Id. 57:15-22.

On February 18, 2022, through a declaration, Villanueva offered for the first time, additional and different reasons for his decision to discharge Yanez in 2020.  For the first time, nearly two years after the discharge, was an allegation made that Yanez violated specific policies,

Waste Disposal Policy, Standard of Conduct Policy, and Team Member Safety and Health Policy. Doc. 20-2 p. 4.   However, this new explanation was pretextual as evidenced above in section II.B.c.a.   Additionally, on January 6, 2022, the day before the deposition of Villanueva, for the first time, Walgreens served the Waste Disposal Policy and Standard of Conduct Policy (Doc. 20-3).   See e.g., Ex. 14 Dep. FV 22:24-23:1.

> **o.**     ***The first time February 2022 purported basis of the violation of the other waste policy was not true, was false, and not believable because Villanueva was not aware of this other waste disposal policy until February 2022.***

Prior to his declaration in February 2022, Villanueva was not aware of the newly referenced other waste disposal policy.   As of January 2022, Villanueva admitted that: he did not know if it was a part of Walgreens' policy (Id. 23:4-14); he had not seen it like anywhere in employee handbooks, (Id. 23:11-14); he has not seen an employee handbook of Walgreens (Id. 21:12-15); and he did not see acknowledgment signed by Yanez (Id. 22:15).   Villanueva testified that he did not know if Yanez was ever given a copy (Id. 24:15-20) or if Yanez ever saw it (Id. 25:1) or if Yanez signed it (Id. 25:6).

> **p.**     ***The newly purported explanations of February 2022 were not true, were false, and not believable because Villanueva could not have discharged Yanez in 2020 as Villanueva claimed differently for the first time in February 2022 because the conduct of Yanez in removing Walgreens' trash with the express consent of Walgreens would not violate the policies newly claimed to be violated.***

These newly purported explanations were pretextual as evidenced above in section II.B.c.a.

Moreover, even before these newly purported reasons lodged nearly two years after discharge, Villanueva's testimony evidenced there were not violations of the specific policies.

On January 7, 2022, Villanueva was asked if Yanez violated any of the non-exhaustive list of conduct that would justify immediate termination (Doc. 20-5 p. 3) and Villanueva testified not to his knowledge or no to the following: (Ex. 14 Dep. FV 33:9-11 (falsification); Id. 33:17-19

(violence); Id. 34:7-10 (destruction of company property); Id. 49:7-10 (fraternization policy); Id. 49:13-17 (sleeping on the job); Id. 56:10-57:3, FV 60:14-17 (unauthorized possession or removal of property); Id. 60:18-20 (unauthorized use of telephones); and Id. 60:21-23 (violating safety rules).

When questioned about theft of company property, Villanueva conceded that the rollers were trash to be disposed of and thrown away as waste. Id. 51:13-19. Villanueva admitted that theft of trash and theft of waste are not on the list of conduct that would justify immediate termination. Id. 54:21-25. Villanueva admitted that theft of trash to be disposed was also not on the list that would justify immediate termination. Id. 55:1-3. Villanueva admitted he saw no document finding Yanez guilty of theft. Id. 55:7-10. He did not call the police and he could if he believed somebody was engaged in theft. Id. 55:11-17.

Furthermore, Villanueva offered no specification of how the policies were allegedly violated, but only shifting conclusory assertions of violations.

Second, even retroactively applying these newly asserted policies to Yanez removing the trash of Walgreens with explicit authorization, there was still no violation. Regarding the waste disposal policy, removal of trash was not prohibited by nor a violation of the asserted policies and not a terminable offense. See Doc. 20-3. The policy was one of best practices. Id. p. 3. There was compliance with the policy, the trash rollers were not placed in the compactor. Doc. 20-3, p. 5.

Regarding the Standard of Conduct, removal of trash was not prohibited by nor a violation of the asserted policies and not a terminable offense. See Docs. 20-5. Even before Villanueva claimed for the first time in February 2022 that Yanez violated this policy, Villanueva was asked about it and he admitted that there were no violations as shown above in section II.B.C.n.

16

Regarding the Team Member Safety and Health Policy, removal of trash was not prohibited by nor a violation of the asserted policies and not a terminable offense.  See Docs. 20-4.  On January 7, 2022, Villanueva testified that Yanez was not found guilty of violating safety rules.  Id. 60:21-23.  Walgreens' asset protection manager admitted that there are no policies or procedures for safety in the removal of trash.  Ex. 17 Dep. CB 18:17-18.  And again, as evidenced above in section II.B.3.c., this explanation was pretext, as Walgreens and Villanueva did not care about all of its other employees hurting themselves or the public in transporting for Walgreens in their personal vehicles.

> **q.     *All of the shifting, vague, conclusory, and obscure explanations over the years for the discharge of Yanez by Villanueva were not true, were false, and not believable because all of them were vague and conclusory.***

**4.     All of the shifting, vague, conclusory, and obscure explanations over the years for the discharge of Yanez by Villanueva were not true, were false, and not believable because Walgreens' stated reasons are implausible or do not make sense.**

When an employer claims to have made a decision for a reason that does not seem to make sense, a factfinder may infer that the employer's asserted reason for its action is a pretext for unlawful discrimination."  *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1356, 191 L. Ed. 2d 279 (2015); *Stalter v. Wal-Mart*, 195 F.3d 285 (7th Cir. 1999) "the employer's stated reason for the termination – that it fired the plaintiff for eating a few handfuls of some other employee's chips "does not pass the straight-face test" and "strikes us a swatting a fly with a sledge hammer.""

**5.     All of the shifting, vague, conclusory, and obscure explanations over the years for the discharge of Yanez by Villanueva were not true, were false, and not believable because Walgreens failed to follow its own policies as typically applied.**

An employee may show that the reasons offered for her termination are false and pretextual by evidence that the employer failed to follow its own policies, practices and protocols. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 239 (5th Cir. 2015) (failure to follow procedures

and produce contemporaneous written documentation of performance problems is evidence of pretext); *Tyler v. Union Oil of California*, 304 F.3d 379, 398 (5th Cir. 2002) (employer's departure from usual policies and procedures may support an inference of discrimination).

> ### a. Walgreens' failure to follow its typical practice and policy to allow employees to dispose of Walgreens' trash as done by Yanez, but Walgreens' selective application of the other waste disposal policy to Yanez is evidence of pretext.

An employer's selective application of a facially neutral policy is evidence of pretext. *E.E.O.C. v. Louisiana Office of Community Services*, 47 F.3d 1438, 1445-46 (5th Cir. 1995). An inference of pretext may be drawn based on evidence that an employer's relevant rules and standards "were not consistently applied." *Lyons v. Tex. Dep't of Criminal Justice*, No. 13-20543, 4 (5th Cir. 2014).

From 2010 until present day, the policy was to place trash outside the store for anyone to take. Now, Villanueva sought to apply a different policy to Yanez, even knowing that there was a difference between policies and practices, you can have policies in the book and have practices very different from policies. Ex. 14 Dep. FV 87:8-14.

> ### b. Walgreens' failure to follow its progressive discipline policy in the discharge of Yanez is evidence of pretext.

Evidence of the employer's failure to follow its progressive discipline policy is evidence of pretext. *Cristain v. Hunter Buildings & Manufacturing, L.P.*, 908 F.3d 962 (5th Cir. 2018).

Walgreens Standards of Conduct Policy Statement expresses Walgreens' progressive disciplinary policy. Doc. 20-5 p. 3. Walgreens violated this policy by discharging Yanez. See Id. Other than the situation with the rollers/trash, there was no other reason Yanez was fired. Ex. 14 Dep. FV 32:7-19; 119:22-120:1. Villanueva received no complaints involving Yanez. Id. 29:9-12. Villanueva testified that he was unaware of prior discipline. Id. 120:1-8. Villanueva admitted that the policy of Walgreens was that "In most instances a team member should not be terminated

for a single misdeed or failure to work up to standard." Id. 30:18-23. Walgreens could have done it in a different manner, by starting with the progressive write-ups or warned Yanez, but they found something petty, something little just to get rid of Yanez. Ex. 4 82:16-83:7.

**6.      All of the shifting, vague, conclusory, and obscure explanations over the years for the discharge of Yanez by Villanueva were not true, were false, and not believable because Walgreens employed Yanez for 21 years and in those 21 years there was only slightly minor discipline.**

The Fifth Circuit in *Salazar v. Cargill Meat Sols. Corp.*, 628 F. App'x 241, 245-46 (5th Cir. 2015) also held that the plaintiff who had worked for the employer for more than twenty years without a single disciplinary incident raised issue of pretext and age discrimination when he was terminated without warning and replaced by a younger employee.

**C.      Walgreens' straw man arguments were futile because its motion failed as a matter of law and were also improper.**

Walgreens' Motion already failed for Walgreens' failure to satisfy sufficiently its burden to articulate a legitimate, non-discriminatory or non-retaliatory reason for its decision to terminate Yanez. Walgreens' Motion failed again because there is substantial evidence of pretext. Pursuant to the burden shifting analysis, Yanez defeated Walgreens' Motion as a matter of law. Walgreens' arguments are futile and pointless because by satisfying the burden shifting analysis Yanez "pretermits" summary judgment, leaving the ultimate question of discriminatory animus to be determined by the trial of fact.

Walgreens creating its own arguments about pretext was also improper because Yanez was not "not limited to presenting evidence of a certain type,"; pretext evidence "may take a variety of forms."; and all evidence is considered in the light most favorable to Yanez, not as chosen and recast by Walgreens.

Moreover, Walgreens' futile arguments still failed.

Walgreens' Motion argument section II.B.1. was already rejected by the United States Supreme Court.  See *McDonnell Douglas Corp.* at 804.

Walgreens' Motion argument section II.B.1.a.  also failed and Villanueva's disputed good faith belief was not proper because Villanueva alone made the shifting determinations Yanez purportedly violated policies without relying upon purported violations alleged by others.

Walgreens' Motion argument section II.B.1.b. also failed and was also fallacious because Yanez has no obligation to evidence compliance with Walgreens' policies, even though he did as evidenced above in section II.B.A.  If Walgreens disputes Yanez's compliance, Walgreens further creates additional disputes of material fact further prohibiting summary judgment.

Walgreens' Motion argument section II.B.2. also failed and was also fallacious because Yanez was not required to show disparate treatment as compared to any similarly situated employee outside of his protected class to substantially evidence pretext.  Disparate treatment is only one form of evidencing pretext, not a required form of evidence of pretext.

Similarly, Walgreens' Motion argument of II.B.3. also failed and was also fallacious because Yanez discredited the basis for his termination by the substantial evidence of pretext defeating Walgreens' Motion as a matter of law. Yanez was not required to show Villanueva applied policies more favorably for younger employees.

Walgreens' Motion argument of II.B.3.a. also failed and was fallacious because Walgreens solely relied upon an unpublished opinion from the Sixth Circuit Court of Appeals that is nonbinding and was also was improper considering that the Fifth Circuit Court of Appeals indicated that the failure to produce contemporaneous written documentation is evidence of pretext. See *Burton* at 239.

Walgreens' Motion argument of II.B.3.b. also failed and was also fallacious as shown above in the section II.B.5.b.

Walgreens' Motion argument of II.B.3.c. also failed and was also fallacious because Walgreens' prior acts of discrimination are "'quite probative'" of the question whether current conduct is discriminatory.  See *Bazemore v. Friday*, 478 U.S. 385, 402 n.13 (1986).

### Prayer

For these reasons, Plaintiff asks the Court to uphold his Constitutional Rights to a Jury Trial by denying Defendant's motion and for such other relief to which he may be justly entitled at law and equity.                         Respectfully submitted,

LAW OFFICE OF BRETT DUKE, P.C.
6350 Escondido Dr., Ste. A-14
El Paso, Texas 79912
(915) 875-0003
(915) 875-0004 (facsimile)
brettduke@brettduke.com

 */s/ Brett Duke*
Brett Duke

LAW FIRM OF DANIELA LABINOTI, P.C.
707 Myrtle
El Paso, Texas 79901
(915) 581-4600
(915) 581-4605 (facsimile)
Daniela@LabinotiLaw.com

 */s/ Daniela Labinoti*
Daniela Labinoti

### CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the clerk using the CM/ECF system, which will send notification of such filing to all counsel.

 */s/ Brett Duke*
Brett Duke