UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **JESUS YANEZ,** | § | |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **EP-21-CV-00073-DCG** |
| | § | |
| **WALGREEN CO.,** | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Walgreen Co.'s "Motion for Summary Judgment"

("Motion") (ECF No. 20).  Plaintiff Jesus Yanez filed a Response in Opposition.  ECF No. 21.

Walgreen Co. filed a Reply in Support of its Motion.  ECF No. 22.  After due consideration, the

Court DENIES the Motion.

## I.      BACKGROUND

### A.  Factual Background

At the center of this case is a moveable, contractible conveyor system.  The Parties refer

to this system as "rollers."  Rollers ease the job of unloading merchandise from a truck and

moving it into a store because boxes can glide along its surface.  Mot. Ex. 4 at 100:2-10.  They

are a somewhat familiar device:



Mot. Ex. 1-D.  They are also heavy (200-300 pounds) and unwieldly.  Mot. Ex. 4 at 97:5-11.

Walgreen Co. ("Walgreens") uses rollers at its stores in the El Paso area.  Plaintiff Jesus Yanez worked at one such store as an assistant manager for nearly 21 years.  Mot. Ex. 7 at 9; Mot. Ex. 4 at 22:10-14.  But Walgreens—more specifically, district manager Froy Villanueva—terminated him on May 28, 2020.  Mot. Ex. 4 at 43:7-11.  Walgreens asserts that Villanueva terminated Yanez because he took a set of old rollers home, in violation of the Company's waste disposal and other policies, and tried to sell them online, which put Walgreens at risk of liability. *E.g.*, *id.* at 43:7-11 and 56:21–57:3; Mot. Ex. 6 at 4, 7.  Yanez argues that reason is pretext for age discrimination.

The rollers Yanez took home and put up for sale were damaged, unsafe, and to be replaced.  Mot. Ex. 4 at 43:14-22 and 79:8-12.  And so they were replaced.  Yanez's store manager, Ruben Alba, contacted Villanueva about the damaged rollers and received approval for a new set.  Mot. Ex. 6 at 9.  Villanueva put in an order for new rollers and assumed that the old ones would be disposed of in accordance with company policy.  Mot. Ex. 7 at 11; Mot. Ex. 1-E.

But Alba and Yanez didn't follow the proper disposal procedures.  Instead, Yanez asked Alba what he was going to do with the old rollers.  Mot. Ex. 6 at 10.  Alba said they were trash and were going to be disposed of, so when Yanez asked if he could take them, Alba gave him permission to do so.  *Id.*; Mot. Ex. 4 at 48:6-11.  Yanez placed the rollers outside, waited until the end of his shift, then loaded the old rollers onto his truck by himself and took them home.  Mot. Ex. 4 at 48:12-16 and 97:7-8; Mot. Ex. 6 at 8.  At some point he placed the rollers for sale, at a price of $500, on OfferUp, an online platform for buying and selling.  Mot. Ex. 6 at 12.

That's how Villanueva found out Yanez took the rollers home.  On May 15, 2020, a store manager in the area, but at a different store, informed Villanueva that she had seen Yanez's posting on OfferUp.  Mot. Ex. 7 at 13.  That same day, Villanueva reached out to Walgreens's

asset protection manager Cielo Birmaher.  Mot. Ex. 6 at 3.  He explained the situation.  Mot. Ex. 6 at 3; Mot. Ex. 7 at 7–8; Mot. Ex. 1-F.  Birmaher immediately opened an asset protection investigation.  *See generally* Mot. Exs. 6 & 7.

As part of the asset protection investigation, Walgreens accepted some evidence (text conversations and a screenshot of the OfferUp ad) and took statements from Alba, Yanez, and Villanueva.  Mot. Ex. 6 at 6.  At some point during the investigation, Villanueva (or Villanueva and Birmaher) had a phone call or meeting with Yanez about the rollers.  Mot. Ex. 4 at 80:20-24.  After that, Yanez brought the rollers back.  *Id.*  Yanez heard nothing else for about two weeks.

On May 28, 2020, Villanueva and Birmaher held a meeting with Yanez which ended with Villanueva terminating Yanez.  Mot. Ex. 7 at 9.  During the meeting, Villanueva informed Yanez of the reasons for his decision.  *Id.*  According to Walgreens, Yanez failed to follow the proper procedures for disposing of large items.  *E.g.*, Mot. Ex. 1 ¶ 14; Mot. Exs. 6 & 7.  And because he failed to follow those procedures, and placed the rollers for sale online, Walgreens was concerned that someone (Yanez or a purchaser) could get injured by the old rollers.  That exposed the Company to liability.  Mot. Ex. 1 ¶ 14; Mot. Ex. 4 at 79:24–80:1.  Ultimately, Walgreens replaced Yanez with someone born on September 30, 1985, making his replacement about 34 years old in 2020.  Resp. Ex. 6 at 3.  Yanez was 53 at the time.  Mot. Ex. 8 at 3.

Yanez has since expressed surprise and frustration about being fired.  *E.g.*, Mot. Ex. 4 at 81:3-12.  It's unclear whether Yanez knew his actions violated official policy or were a terminable offense because, as he understands it, Walgreens has a de facto policy of placing discarded large items outside the store (a violation of the Company's written policy) even when it knows people will take those items.  Resp. Ex. 2 at 74:24–75:4; Resp. Ex. 1 at 74:24–75:3; 90:1-7; Mot. Ex. 1-A (Waste Disposal Policy).  Stores in the El Paso and Las Cruces area may

follow this de facto policy. Mot. Ex. 11 at 19:20–24:15 & 30:10-20 (deposition testimony from Edward Marquez); Resp. Ex. 5 ¶¶ I–IV; Resp. Ex. 1 at 45:3-6, 74:24–75:25, 76:9-10, 77:13-17, 87:3-6, 89:11–90:10. Walgreens has never before taken disciplinary action against employees who discard large items by placing them outside the store. Resp. Ex. 5 ¶¶ IV–VI; *see also* Resp. Ex. 2 at 74:19–75:4; Mot. Ex. 4 at 81:24-25.

Yanez also had permission from Alba, his direct supervisor, to take the rollers home. Mot. Ex. 4 at 94:19-24. A fact that Villanueva knew when he decided to terminate him, Resp. Ex. 4 at 56:14–57:3, and something he later agreed "Yanez rightfully relied on," *id.* at 65:2-5. Additionally, Yanez's termination came after nearly 21 years of service to Walgreens, during which time he had little disciplinary record. *See* Resp. Ex. 4 at 120:2-6. And during Villanueva's overlap with Yanez at Walgreens, he never received a complaint about Yanez. *Id.* at 29:9-12.

Despite his clean disciplinary record, Walgreens resorted to immediate termination. There is disagreement about whether that was appropriate under Walgreens's own policies. Walgreens has a progressive discipline policy that, by its own terms, should be followed "[i]n most instances." Mot. Ex. 1-C at 3. But the written policy also reserves Walgreens the right to terminate employees for some undefined "misconduct" that "justif[ies] immediate termination." *Id.* Still, Yanez believes progressive discipline would have been the appropriate route in this circumstance. Mot. Ex. 4 at 83:2-7. And Villanueva agrees that progressive discipline should typically be employed. Resp. Ex. 4 at 31:11–33:3; 32:7-10. To Yanez, these facts—the de facto policy, Alba's permission, and immediate termination—suggest Walgreens was hiding its true motive for terminating him: age discrimination.

Walgreens sees it differently.  Walgreens has a written policy that tells employees the procedure for disposing of large items, like rollers.  Mot. Ex. 1-A.  That policy requires employees to "call StoreCare+ . . . to open a work order for a bulk pickup."  *Id.* at 5; Mot. Ex. 4 at 51:15-23.  Something which Yanez possibly knew at the time he took the rollers home.  *Compare* Mot. Ex. 1-F *with* Resp. Ex. 7 at 44.

To Walgreens, taking the old, damaged rollers home and trying to sell them online violated company policy and created a risk of liability.  *E.g.*, Mot. Ex. 6 at 4.  It violated company policy because Alba (or potentially Yanez) should have opened a pickup order with StoreCare+ instead of placing the old rollers outside.  *See* Resp. Ex. 4 at 73:18-25; Resp. Ex. 7 at 33:4-7.  Placing the rollers outside, where someone could try to take them or otherwise come into contact with them, created liability for Walgreens.  Resp. Ex. 7 at 33:4-7; Mot. Ex. 1 at ¶¶ 14–15; *see also* Resp. Ex. 4 at 62:1; Mot. Ex. 7 at 7, 13–14; Mot. Ex. 1-B (Team Member Health and Safety Policy).  The Company's exposure to liability grew, in its eyes, when Yanez tried to sell the old rollers online.  Mot. Ex. 1 ¶ 14.  After receiving guidance from Walgreens's asset protection division, Villanueva concluded the appropriate course of action was to terminate Alba and Yanez.  *E.g.*, Mot. Ex. 6.  Consequently, Walgreens sees this case as one of a business decision, grounded in company policy and procedure, that had nothing to do with Yanez's age.

## B.  Procedural Background

Yanez filed a Charge of Discrimination with the Texas Workforce Commission Civil Rights Division and the Equal Employment Opportunity Commission ("EEOC") in November 2020.  Mot. Ex. 8.  Unable to conclude that there were any violations, the EEOC issued a notice of right to sue to Yanez.  Mot. Ex. 9.

On February 12, 2021, Yanez filed suit against Walgreens in the County Court at Law No. 3 in El Paso County, Texas.  ECF No. 1–5.  Walgreens removed the case to federal court on

March 23, 2021.  ECF No. 1.  The Court issued a Scheduling Order, ECF No. 6, discovery

ensued, and Walgreens filed the present Motion for Summary Judgment on February 18, 2022,

ECF No. 20.  Yanez filed his response.  ECF No. 21.  Walgreens filed a reply in support of its

Motion.  ECF No. 22.

## II.   DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the

lawsuit under governing law."  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir.

2009) (quotations omitted); *Roy v. City of Monroe*, 950 F.3d 245, 254 (5th Cir. 2020).  A dispute

about a material fact is genuine if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

*McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357–58 (5th Cir. 2017).

"A party seeking summary judgment always bears the initial responsibility of informing

the district court of the basis for its motion and identifying those portions of the record which it

believes demonstrate the absence of a genuine issue of material fact."  *E.E.O.C. v. LHC Grp.,*

*Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986)) (cleaned up).  "Once the moving party has demonstrated the absence of a material fact

issue, the non-moving party must go beyond the pleadings and designate specific facts showing

that there is a genuine issue for trial."  *McCarty*, 864 F.3d at 357 (cleaned up).  The burden of

showing "specific facts" that establish a "genuine issue concerning every essential component of

the case" cannot be met "by some metaphysical doubt as to the material facts, by conclusory

allegations, by unsubstantiated assertions, or by only a scintilla of evidence."  *Id.* (cleaned up).

In ruling on a motion for summary judgment, "courts must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020). Courts, however, "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal quotations omitted). That is, courts refrain from "determine[ing] the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, "the evidence of the nonmovant is to be believed." *Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162, 167 (5th Cir. 2018) (cleaned up). Though the court "need not credit evidence that is 'merely colorable' or not significantly probative." *Id.* (quoting *Anderson*, 477 U.S. at 249–50).

### B.  Analysis

Yanez brings this case under the Texas Commission on Human Rights Act ("TCHRA").[1] The TCHRA prohibits age discrimination in employment. Tex. Labor Code § 21.051. Relevant here, an employer commits age discrimination when it "discharges an individual" because of their age. *Id.* § 21.051(1).

Though Yanez's claim is one based in state law, courts cite substantive federal law when analyzing age discrimination claims under the TCHRA. That is because "Section 21.051 is effectively identical to Title VII, its federal equivalent, expect that Title VII does not protect against age and disability discrimination," which are "addressed in separate [federal] statutes." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633 and 641 (Tex. 2012) (finding guidance from federal court interpretation of the Age Discrimination in Employment Act (ADEA)). And the Texas Supreme Court has "consistently held" that "[b]ecause one of the purposes of the TCHRA is to 'provide for the execution of policies of [the federal equivalents],'"

---

[1] Walgreens removed this case to federal court based on diversity of citizenship. 28 U.S.C. § 1441(b). The Court has diversity jurisdiction. 28 U.S.C. § 1332(a).

the federal "cases interpreting them guide [the] reading of the TCHRA." *Id.* at 633–34 (quoting *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001)).

When a plaintiff relies on circumstantial evidence to establish discrimination under the TCHRA, their claim "is evaluated under the burden-shifting framework first articulated in *McDonnell Douglas*." *Goudeau v. Nat'l Oilwell Varco, LP*, 793 F.3d 470, 474 (5th Cir. 2015); *see also Garcia*, 372 S.W.3d at 634. Under the burden-shifting framework, "a plaintiff must first establish a prima facie case of age discrimination." *Goudeau*, 793 F.3d at 474 (quotations omitted). If established, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination." *Id.*

If the employer meets its burden, then the burden shifts back to the plaintiff to establish that age discrimination was a reason for termination. *Id.* at 474–75. Under the TCHRA, "a plaintiff can prove discrimination at the third stage by establishing 'either (1) the reason stated by the employer was pretext for discrimination, or (2) the defendant's reason, while true, was only one reason for its conduct and discrimination is another motivating factor.'" *Id.* at 475 (quoting *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439–40 (5th Cir. 2012)). Yanez attempts to show age discrimination only by arguing that Walgreens's stated reason for terminating him was pretext. *See generally* Resp.

### 1. *Prima Facie Case*

Yanez must first make out a prima facie case. This is not an onerous burden. *Reed*, 701 F.3d at 439. To do so, he must demonstrate "that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age." *Goudeau*, 793 F.3d at 474 (quotation omitted). Once

demonstrated, there is "a presumption of discrimination." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015).

Neither party disputes that Yanez has established a prima facie case.  He is able to point to evidence that shows he was (1) discharged,[2] (2) qualified for the position,[3] (3) within the protected class,[4] and (4) replaced by someone who is both outside the protected class and younger than him.[5]  He has consequently met his burden at the summary judgment phase to establish a prima facie case of age discrimination under the TCHRA.

### 2.  *Legitimate Non-Discriminatory Reason*

The burden now shifts to Walgreens to articulate a legitimate, nondiscriminatory reason for terminating Yanez.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Walgreens's burden at this second step is shaped by the final step in the burden-shifting analysis: the plaintiff's obligation to show pretext or, under the TCHRA, that age discrimination was *a* reason for the adverse employment action.  Walgreens must state its reason for terminating Yanez "with sufficient clarity" so as "to afford [him] a realistic opportunity to show that the reason is pretextual."  *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004).  Sufficient clarity

---

[2] *E.g.*, Resp. Ex. 7 at 5 (internal asset protection investigation report); Resp. Ex. 4 at 40:13-18 (Villanueva admission that he made decision to terminate Yanez).

[3] A plaintiff can show that they are qualified for the position based on the number of years they have worked for the employer, especially if they already served in the position they held when the employer terminated them.  *See Inmon v. Mueller Copper Tube Co., Inc.*, 757 F. App'x 376, 381 (5th Cir. 2019) (unpublished) (plaintiff was "qualified for the position, based on having worked at the plant for nineteen years").  Yanez readily shows he was qualified to be an assistant store manager at Walgreens.  *E.g.*, Mot. Ex. 7 at 9 (stating Yanez had been with Walgreens for "over 20 years"); Mot. Ex. 4 at 22:10-14 (Yanez served as an assistant store manager for "just shy of 21 years").

[4] Walgreens terminated Yanez when he was 53 years old.  *E.g.*, Mot. Ex. 8 at 3.  That places Yanez within the protected class.  Tex. Labor Code § 21.101 (age discrimination provisions "apply only to discrimination against an individual 40 years of age or older").

[5] Walgreens replaced Yanez with someone born on September 30, 1985, making his replacement about 34 years old in 2020.  Resp. Ex. 6 at 3.  That puts his replacement outside of the protected class.  Tex. Labor Code § 21.101.

requires that the "employer [] articulate in some detail a more specific reason than its own vague and conclusional feeling about the employee." *Id.* Only with that level of detail can the fact finder determine whether the reason given was or was not in part *because of* the employee's membership in a protected class. *Id.*

This burden too is not onerous. It "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)); *Patrick*, 394 F.3d at 318.

Walgreens contends that Yanez violated three company policies by failing to comply with the proper procedures for disposing of the rollers. Mot. Ex. 1 ¶ 14–15. And by taking the actions he did and failing to comply with those procedures, Walgreens asserts that Yanez put the Company at risk of liability. *Id.* More succinctly, Walgreens asserts that Villanueva terminated Yanez because he took the old rollers home and attempted to sell them, which violated Walgreens's policies and put the Company at risk of liability.

Yanez counters that Walgreens's reasons for terminating him have shifted, and that they are "vague, conclusory, and without sufficient clarity." Resp. at 4. But Yanez articulates no argument and, other than to lay out the standard, cites no authority in support for his position that Walgreens fails to articulate a legitimate, nondiscriminatory reason for terminating him. *Id.* The Court will not attempt to make arguments for Yanez.

Walgreens's stated reason for terminating Yanez is a legitimate, nondiscriminatory reason for termination. Walgreens articulated Yanez's policy violations and relied on those violations in making its decision to terminate him. That is more than sufficient to meet its burden of production. *E.g.*, *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 324 (5th Cir. 2021)

(employer provided legitimate, nondiscriminatory reason "when it detailed [the plaintiff's] numerous policy violations and performance issues"); *Cervantez v. KMGP Servs. Co., Inc.*, 349 F. App'x 4, 9 (5th Cir. 2009) (per curiam) (citing *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006)) (concluding that violation of company policy "constitutes a legitimate, nondiscriminatory reason for [] discharge").

### 3. Pretext

This is where the real dispute in this case lies. Because Walgreens has shown a legitimate, nondiscriminatory reason for terminating Yanez, the "prima facie case drops out" and the question becomes: Did Walgreens discriminate against Yanez on the basis of his age? *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 395 (5th Cir. 2002).

Yanez can help answer that question in his favor by showing pretext. "Pretext may be established through evidence of disparate treatment or by showing the employer's explanation to be false or 'unworthy of credence'—that it is 'not the real reason for the adverse employment action.'" *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quoting *Watkins v. Tregre*, 997 F.3d 275, 283 (5th Cir. 2021) and *Laxton v. Gap Inc.*, 333 F.3d 572, 578–79 (5th Cir. 2003)). Put plainly, the inquiry here seeks to uncover whether Walgreens's stated reasons for terminating Yanez were, in fact, "the real reason[s] for [his] termination." *Burton*, 798 F.3d at 233 (quotation omitted).

Some further clarification of the standard is warranted because the parties do not appear to agree about the proper articulation of a plaintiff's burden at the pretext stage of the *McDonnell Douglas* framework. So let's start with what it's not. It's not Yanez's burden, as Walgreens seems to suggest, to produce substantial evidence that the real reason Villanueva terminated him was because of his age. Mot. at 11. Rather, Yanez may move this case from summary judgment to the jury by establishing a prima facie case (which he has done) and pointing to "sufficient

evidence to find that [Walgreens's] asserted justification [for terminating him] is false." *Reeves*, 530 U.S. at 148. This is entirely consistent with the Fifth Circuit's formulation of the standard, as described above, that requires only that a plaintiff show the employer's stated reason for an adverse employment action was "not the real reason." *Jones*, 8 F.4th at 368 (quotation omitted); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) (citing *Reeves*).

This makes sense. Walgreens knows why it terminated Yanez. If Yanez can show that the Company's stated reason for termination—presumably, its best (maybe only) legitimate, nondiscriminatory reason—is false or unworthy of credence, then "discrimination may well be the most likely alternative explanation." *Reeves*, 530 U.S. at 147. But it also might not. So to be clear, Yanez must still point to evidence sufficient to create more than "a weak issue of fact." *Id.* at 148; *Jones*, 8 F.4th at 369 ("[A] plaintiff must produce substantial evidence of pretext.").

The Court begins its analysis with the reason Walgreens says it terminated Yanez. Walgreens contends that Villanueva fired Yanez because he "violat[ed] company policy, which subjected Walgreens to a risk of liability." Mot. at 3; Mot. Ex. 1 ¶¶ 14–15. Specifically, Walgreens contends that Villanueva understood Yanez to have violated three company policies: the Waste Disposal Policy, the Standards of Conduct, and the Team Member Safety and Health Policy. Mot. Ex. 1 ¶ 14. It's now Yanez's burden to "put forward evidence rebutting" that he was terminated for violating company policy and putting Walgreens at risk of liability. *Jones*, 8 F.4th at 368 (quotation omitted).

Trying to make that showing, Yanez throws a lot at the wall. Much of it is undeveloped and unhelpful and much of it is, quite frankly, a distraction. But some of it sticks. Yanez seems to make the following core arguments: (1) He did not actually violate the Company's written policies, Resp. at 15–17, and even if he did, Walgreens had a de facto policy governing the

disposal of large items, and Villanueva knew about that policy, Resp. at 5–7.  (2) His manager explicitly authorized him to take home the rollers and Villanueva knew that.  Resp. at 8–10.  (3) Walgreens failed to follow its progressive discipline policy.  Resp. at 18–19.

Before dealing with those, the Court will quickly address Yanez's other arguments.  First up: Yanez argues Walgreens's concern about liability is pretextual.  Yanez contends that Walgreens allows and requires employees to haul tables in their personal vehicles.  Resp. at 7–8.  The tables are apparently used for community events or recruiting events.  Reply at 9; Resp. Ex. 4 at 82:6–83:1 and 88:13–18.  The argument seems to be that if Walgreens cares about adhering to a policy of reducing or eliminating risks of liability for the Company, Walgreens must apply the same policy to carrying tables as it does to employees taking home old rollers.

This is strikingly unpersuasive.  First, the tables, which apparently weigh 50 to 60 pounds, Mot. Ex. 1 ¶ 16, are not unwieldy 200–300-pound metal objects, *id.*; Mot. Ex. 4 at 97:5–6.  Even if Birmaher thinks its unsafe to carry tables, Resp. Ex. 7 at 33:19–20, the two situations are materially different.  Second, Yanez had approval to carry the tables, but not the rollers.  Mot. Ex. 1 ¶ 16.  It is unsurprising that Villanueva would apply different standards to carrying tables versus single handedly loading rollers onto a personal truck.  No reasonable jury could infer pretext from this set of facts, even when combined with all else addressed in this opinion.

Next up, Yanez asserts that Walgreens did not believe he stole the rollers.  Resp. at 10.  This is a distraction.  It does not matter *at all* that Villanueva admitted Yanez was not fired for stealing the rollers, Resp. Ex. 4 at 100:4–6, or that he never filed a police report, *id.* 55:11–16, or that Walgreens's policies don't describe theft of trash, *id.* 54:20–10, because that is not the reason Walgreens says it terminated Yanez.  And Yanez admits that fact.  Mot. Ex. 4 at 43:7-11

("[Villanueva] came in, told me that by me taking the rollers home I had put the company[] at risk [of] liability, and that was the reason why he was terminating me.").

Another one.  Yanez presses the point that Walgreens first contended that he was seeking to benefit from a company asset during litigation, not when Villanueva terminated him.  Resp. at 13–15.  But the record belies this contention.  Before terminating Yanez, Villanueva opened an internal *asset* protection investigation, Mot. Exs. 6 and 7, after which Villanueva decided to terminate Yanez "for failure to follow proper policy and procedure, safety and security," Mot. Ex. 6 at 7.  Villanueva also took contemporaneous notes that indicates he understood Yanez to have violated policy based, in part, on his attempt to sell the rollers.  Mot. Ex. 1-F.  The record shows that Walgreens has maintained the same reasons for terminating Yanez.  If Yanez's problem is with the level of detail, that does not, in this case, evidence pretext.  *See Minnis v. Bd. of Supervisors of La. State Univ.*, 620 F. App'x 215, 220 (5th Cir. 2015) (per curiam) ("[A]n employer's reasons becoming more detailed as the dispute moves beyond the initial notice to an employee and enters into adversarial proceedings, is insufficient to create a jury question regarding pretext absent an actual inconsistency.").

Yanez next makes three short arguments, citing no authority about their relevance to his age discrimination claim: (1) Walgreens had a trash problem, and he was just trying to help; (2) Villanueva was not mad at him for taking the rollers home; and (3) Walgreens didn't want the rollers back.  Resp. 10–12.  These appear to be a "no harm, no foul" argument.  But that is not probative of the ultimate issue of whether Villanueva had a good faith basis for terminating Yanez.  *Kitchen v. BASF*, 952 F.3d 247, 253 (5th Cir. 2020) (citing *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165–66 (5th Cir. 1993)) ("The focus of the pretext inquiry is . . . whether [the employer] reasonably believed its non-discriminatory reason for discharging

[the employee] and then acted on that basis."); *see also Collins v. Kimberly-Clark Pa., LLC*, 247 F. Supp. 3d 571, 592 (E.D. Pa. 2017) ("A finding of insubordination does not depend on the result of a failure to comply with legitimate orders; it is the failure itself that constitutes insubordination."); *Kalkhorst v. United Parcel Serv., Inc.*, 375 F. Supp. 2d 1079, 1082–83 (D. Colo. 2005) (rejecting idea that "no harm, no foul" shows pretext where employee violated company policy but nothing resulted from that violation).  These arguments do not advance Yanez's attempt to show pretext.

With that out of the way,[6] the Court turns back to the arguments that have more teeth. And despite the discussion above, the Court concludes that there is a genuine issue of material fact about whether Walgreens's asserted reason for terminating Yanez is pretext.  This comes principally from three sets of facts.  First, there is substantial evidence that Walgreens may have had a de facto policy governing disposal of large items and as a result of that policy Walgreens

---

[6] The Court must actually address one more issue.  Counsel for Yanez must be more careful about representing facts in the record.  There were a number of instances of misrepresentation, but none more egregious than the following:

On page 7 of his Response, Yanez asserts Villanueva testified during his deposition that older employees "tend to tank it."  In the context of this case, that could be extraordinarily helpful evidence for him.  But it's a complete and total misrepresentation of the deposition testimony.

Q. Okay. But then tell me, then, do you remember any conversation with Mr. Alba at all involving what you believe that older store managers tank it at the end of their careers?

A. No.

Q. Is that something that you would say, or no?

A. No.

Q. You'd agree with me that's kind of like a discriminatory statement. Right? I mean, because not every old employee tanks it at the end of their career. Correct?

A. Correct.

Resp. Ex. 4 at 41:16–42:3.  As the reader can undoubtedly tell, Villanueva *never* said, *nor* agreed with, a statement about older employees tending to "tank it."  This sort of misrepresentation must not happen again, and it certainly will not be accepted at trial.

knew people took those discarded large items.  And while there is no direct evidence currently in the record that Villanueva knew about this de facto policy, there is evidence that the practice was widespread in the El Paso/Las Cruces area.  That creates a credibility issue.  The jury must decide whether the de facto policy existed and whether Villanueva can credibly testify that he did not know about the de facto policy.

Second, Yanez points to evidence that his manager gave him explicit permission to take the rollers home.  On top of that, he is able to point to evidence that Villanueva thinks that employees should be able to rely on their employer when they give permission to do something.  This calls into question whether Villanueva had a good faith belief that Yanez committed a terminable offense.  Third, Yanez is able to point to evidence that Villanueva should have opted for progressive discipline instead of immediate termination.  Put together, these three sets of facts create a genuine dispute for trial.  The Court elaborates on this below.

### (a) A de facto policy that contradicts official policy

The success of Yanez's claim is based, in large part, on whether Walgreens had a de facto policy of discarding large items by placing them outside the store instead of following the Company's written policy for the same.  And if there is a de facto policy, Yanez must also show that there is a genuine issue about whether Walgreens selectively applied that policy.

Walgreens is right that what matters is whether Villanueva "reasonably believed" that Yanez committed misconduct and then terminated him "in good faith."  *Waggoner*, 987 F.2d at 1165.  To make that showing, Walgreens focuses on whether Villanueva reasonably believed Yanez violated *written* company policy.  Mot. at 6–9.  Yanez has not pointed to evidence that raises a genuine issue about this.  Evidence shows that Villanueva knew about Walgreens's written policies, including the waste disposal policy, at the time he relied on them to terminate

- 16 -

Yanez.  *See, e.g.*, Mot. Ex. 1; Mot. Ex. 1–F; Mot. Ex. 6 at 7; Resp. Ex. 4 at 23:23 and 29:19–31:23.  Yanez attempts to show the contrary, Resp. at 15, are unconvincing.

For example, Yanez asserts that Villanueva admitted that he didn't know about the waste disposal policy.  *Id.*  But Villanueva only said that it wasn't in the employee handbook.  Resp. Ex. 4 at 21:12–24:5.  Multiple times he mentioned that the policy was available electronically. *Id.*  Because Yanez points to no other facts that create an issue about Villanueva's knowledge of the waste disposal policy (or other policies) at the time he terminated him, Yanez is unable to show there is a genuine issue of material fact about whether Villanueva reasonably believed that Yanez violated written company policy.

That might typically end the inquiry.  But not here.  Yanez argues that Walgreens's written policy isn't the only policy at play.  According to Yanez, Walgreens (in the El Paso area) had a contradictory de facto policy that permits a different method of disposing of large items. Resp. at 7–8.  Yanez then asserts that Walgreens selectively applied that policy.

Few courts have squarely addressed whether a plaintiff can show pretext by establishing that the employer had a de facto policy that contradicted their written (or official) policy, and that the employer ignored the de facto policy, instead applying the written policy as a basis for termination.  But the Fifth Circuit has recognized, albeit in an unpublished opinion, that an employer can have a de facto exception to its written policy, which, if "selectively ignored," could be evidence of pretext.  *Lyons v. Tex. Dep't of Crim. Just.*, 581 F. App'x 445 (5th Cir. 2014) (per curiam).

In *Lyons*, the defendant-employer demoted the plaintiff for violations of its timekeeping policy.  *Id.* at 446.  The plaintiff sued for gender discrimination, arguing that a male coworker "committed the same timekeeping violations as [her] but was not subjected to any adverse

employment action." *Id.* In support of her case, the plaintiff provided an affidavit of her former supervisor who testified that he had previously told the plaintiff that, as an employee ineligible for overtime, "it was not necessary for her to track her hours to the minute on a day-to-day basis." *Id.* at 447. That advice was contradictory to the written (or official) timekeeping policy. *See id.* The Fifth Circuit held the supervisor's affidavit created a genuine dispute about whether the employer "recognized a de facto exception" to the timekeeping policy. *Id.* And "[i]f that de facto exception was selectively ignored," then a reasonable jury could conclude that the employer's strict adherence to the written policy as a basis for the adverse employment action was pretext. *Id.*

So to show pretext, Yanez must point to substantial evidence that Walgreens had a de facto policy that contradicted and superseded the written policy, and that Walgreens selectively ignored the de facto policy. Or said another way, Yanez must show it selectively applied the written policy to him. *Krause v. Kelahan*, 6:17-CV-1045 (LEK/ATB), 2020 WL 2838859, at *19 (N.D.N.Y. May 29, 2020) (recognizing that a de facto policy "if adequately established, would inject doubt into [a defendant's] explanation"); *Koren v. Eagle Ins. Agency, Inc.*, No. 03 C 4261, 2005 WL 589755, at *4–5 (N.D. Ill. Mar. 11, 2005) (recognizing that a de facto policy can be at odds with a written policy, and that a de facto policy might "make it implausible" that the employer had a good faith belief that the plaintiff actually violated company policy).

Yanez carries this burden. He points to evidence that creates a genuine issue about the existence of Walgreens's de facto policy permitting the disposal of large items by placing them outside of the store. He does so through the deposition testimony of Edward Marquez, Ruben Alba, and himself.[7]

---

[7] Villanueva also admits that there can be de facto policies that contradict written policy. Resp. Ex. 4 at 87:11-14

Marquez testified that his store has placed broken ladders and old rollers outside the store by the dumpster.  Mot. Ex. 11 at 19:20–20:19, 21:14–23:13, 24:2-15; 30:10-20.  He was also told by StoreCare+ (which he contacted per the written policy) that this was acceptable.  *Id.* at 19:20–24:15.  And, according to him, no one at Walgreens ever mentioned that discarding large items by the dumpster violated Walgreens's policy.  Resp. Ex. 2 at 73:16–74:12; 75:5-11.

Alba supports this.  He declared that "store managers regularly put store fixtures . . . in their trash bins" or "outside their stores" when the trash bins were full.  Resp. Ex. 5.  ¶¶ I–IV.  To Alba, this was regular practice in the "El Paso and Las Cruces" area.  *Id.* ¶ III.

Finally, Yanez asserts that standard practice was to place trash outside.  It was never to call StoreCare+.  In the time since Walgreens hired Yanez in 1999, Mot. Ex. 4 at 18:6-9, he contends that large trash items were always placed outside and StoreCare+ was never called, Resp. Ex. 1 at 45:3-6 ("[W]e just left [the rollers] outside, like we normally do with every other type of fixture that we need gone in the store, and somebody will come and pick it up."); 74:24–75:25; 76:9-10 ("We never opened tickets on trash removal, never."); 77:13-17; 87:3-6 ("Again, we don't call StoreCare on trash removal."); 88:13-25 (placed pallets outside); 89:11–90:10 ("[I]n my 21 years—or 20 years with the company, we would never call StoreCare to remove trash.  Never.").

Evidence also shows that there is a dispute about whether the de facto policy has been selectively applied.  Marquez testified in his deposition that it would not be a violation of Walgreens policy to place items by the dumpster for anyone to take.  Resp. Ex. 2 at 74:19–75:4.  Similarly, Alba declared that he has no knowledge of any Walgreens employees ever being told the practice was wrong, let alone knowledge of Walgreens disciplining anyone for following this apparent de facto policy.  *Id.* ¶¶ IV–VI.  And Marquez and Yanez testified in their depositions

that Walgreens employees place large items by the dumpster with knowledge that someone (not trash services) will come pick them up.  Resp. Ex. 2 at 74:24–75:4; Ex. 1 at 74:24–75:3; 90:1-7.

Walgreens avers that Yanez is unable to show that Villanueva was aware of the de facto policy or any past violations of it.  As the record stands, that's true.  Yanez has not pointed to direct evidence of that.  But the deposition testimony that Yanez does point to creates a credibility issue for the jury.  Evidence tends to show that Walgreens, in the El Paso area, had a de facto policy governing disposal of large items.  Villanueva may not be aware of that (or he might be), but that is not a decision the Court can make based on deposition transcripts.  *See Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507 (5th Cir. 1988).  It is for the jury to decide.

If the jury does not find Villanueva credible, it may reasonably believe that he was aware of the de facto policy at the time he terminated Yanez.  After making credibility determinations, the jury may also reasonably believe that Villanueva knew Walgreens does not terminate employees for disposing of large items outside the store, even though Walgreens knew people took those large items from its premises.  All of this may well suggest that Villanueva did not act in good faith when terminating Yanez for disposing of the rollers by putting them outside then taking them home.

### (b) The employee's authorization to commit the act in question

Yanez points to evidence that Alba, his manager, gave him permission to take the rollers home.  *E.g.*, Resp. Ex. 5 ¶ XII; Resp. Ex. 7 at 30:3-11; Mot. Ex. 6 at 8, 10; Mot. Ex. 7 at 7.  Villanueva also knew, prior to terminating Yanez, that Alba gave him permission to take them.  Resp. Ex. 4 at 56:14-19; 56:24–57:3.  Moreover, Villanueva admitted during his deposition testimony that employees should be able to rely on what their immediate supervisors tell them and should not be punished for doing so.  Resp. Ex. 4 at 64:13-19.

This raises a genuine issue of whether Villanueva believed, in good faith, that Yanez committed a terminable offense.  A reasonable jury could find that Villanueva knew Yanez had permission to take the rollers home, and that Villanueva believed, because of that permission, Yanez was not required to strictly adhere to Walgreens's policies.  *Cf. Lyons*, 581 F. App'x at 446–47 (relying, in part, on evidence that employee had permission to depart from company policy).

### (c)  The employer's failure to follow a policy of progressive discipline

While "the law does not require warnings" or progressive discipline, "when an employer opts to have a disciplinary system that involves warnings, failure to follow that system may give rise to inferences of pretext."  *Goudeau*, 793 F.3d at 477; *see also Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 224 (5th Cir. 2000).  This is true even when an employer's policy allows for immediate termination.[8]  *Cf. Cristain v. Hunter Bldgs. & Mfg., LP*, 908 F.3d 962, 964 (5th Cir 2018) (addressing retaliation claim).  But an inference of pretext can only be drawn when there is some nexus to age.  *Tyler*, 304 F.3d at 396–97; *Gill v. DIRTT Env't Sols., Inc.*, 790 F. App'x 601, 604 (5th Cir. 2019).

Walgreens points to its policies which provide for immediate termination.  Strictly speaking, the Company is correct that its policy reserves for it the right to terminate an employee for just about any conduct.  Mot. Ex. 1-C at 2 ("In addition, some conduct may justify immediate termination of employment.") and 5 ("This policy does not alter the nature of at-will employment whereby a team member may be terminated at any time, . . . nor does the policy entitle team members to progressive disciplinary action in any particular case.").  That, however,

---

[8] That is, of course, only if the plaintiff is able to produce substantial evidence of a genuine dispute over whether the employer should have followed its progressive discipline policy instead of resorting to immediate termination.  *See Cristain v. Hunter Bldgs. & Mfg., LP*, 908 F.3d 962, 964 (5th Cir 2018).

does not allow Walgreens to escape the fact that it can create a circumstance, by its actions, where failure to employ progressive discipline is evidence of pretext. *Goudeau*, 793 F.3d at 477; *Stroup v. United Airlines, Inc.*, 26 F.4th 1147, 1159 (10th Cir. 2022) (recognizing possible de facto policy of progressive discipline); *cf. Cristain*, 908 F.3d at 964.

Though Walgreens's policy is written broadly, it also provides that "[i]n most instances, a team member should not be terminated for a single misdeed or failure to work up to standard." Mot. Ex. 1-C at 3. Evidence suggests that Villanueva believes that "in most instances" progressive discipline is appropriate so that employees have proper notice of expectations. Resp. Ex. 4 at 31:11–33:3; 32:7-10 ("[N]o employee should be fired if – for something they don't know was wrong for them to do in the first place.").

Here, there is a dispute about whether Villanueva lived up to his own conception of the policy. As discussed, it is unclear whether Yanez understood that his actions violated Walgreens's policy, or that he understood it to be an offense worthy of immediate termination. *Compare supra* at 16–20 (discussing de facto policy) *with* Mot. Ex. 4 at 38:14-18 (Yanez trained on code of conduct policy); *id.* at 48:21–49:3 (Yanez trained on waste disposal policy); *id.* at 50:7-13 (same); *id.* at 76:1-9 (same); Mot. Ex. 5 (Yanez's training records). That, under these circumstances, Villanueva resorted to immediate termination provides some support for Yanez's pretext claim.

Moreover, Yanez worked for Walgreens for nearly two decades with little disciplinary issues. Yet Villanueva terminated him without employing progressive discipline. That is some additional evidence of pretext. *Salazar v. Cargill Meat Sols. Corp.*, 628 F. App'x 241, 245 (5th Cir. 2015) (finding, in addition to other facts, that because plaintiff worked for the employer "for more than twenty years without a single disciplinary incident" one could draw an inference of

pretext).  Walgreens's defense that its policy allowed for immediate termination will not work to justify its actions at the summary judgment stage when other evidence suggests the Company would typically employ progressive discipline.  *Stroup*, 26 F.4th at 1159; *see also Tyler*, 304 F.3d at 396 ("unexplained departure" from "*usual* policies and procedures" may support an inference of pretext (emphasis added)).

Finally, Yanez is able to point to evidence establishing some nexus between his age and the Company's departure from its progressive discipline policy.  First, Yanez worked for Walgreens for nearly 20 years and had a relatively clean disciplinary record.  *Tyler*, 304 F.3d at 397 (noting recent "positive performance appraisals" as evidence of a nexus).  Second, both Marquez (and of course Yanez) found it curious that Walgreens terminated Yanez without first employing progressive discipline.  *See* Resp. Ex. 2 at 75:13-21 (Marquez on termination of Yanez: "My thought on it is it was their opportune moment to get rid of an older, higher-paid employee."); Resp. Ex. 1 at 81:20–83:7.  In combination with other evidence of pretext discussed above, a reasonable jury could infer that Walgreens's departure from a progressive discipline policy further supports Yanez's claim that the Company's reason for terminating him was pretextual.

### III.    CONCLUSION

It's true that Yanez's subjective belief that he was terminated because of his age "is simply insufficient to establish" age discrimination under the TCHRA.  *See Waggoner*, 987 F.2d at 1164.  But that is not the only evidence Yanez is able to point to.  A reasonable jury could conclude that Walgreens's stated reason for terminating him was pretext.  That in combination with the prima facie case may lead a reasonable jury to infer that Walgreens terminated Yanez because of his age.  *Reeves*, 530 U.S. at 147–48.  On the other hand, a reasonable jury could conclude that Walgreens reasonably believed its non-discriminatory reason for discharging

Yanez and that it terminated him in good faith.  Because there are genuine issues of material fact, disposing of this case on summary judgment is inappropriate.

Accordingly, **IT IS ORDERED** that Walgreen Co.'s "Motion for Summary Judgment" (ECF No. 20) is **DENIED**.

**So ORDERED and SIGNED this 4th day of May 2022.**

_____
**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**